UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                            **REPORT, RECOMMENDATION AND ORDER**

v.

                            **Case No. 1:22-cr-182 (LJV)(JJM)**

MELANIE PRYOR, MICHAEL PRYOR, SHAWN
PRYOR, and AMAHDJA GREENE,

                       Defendants.

_____

        Defendants are charged in an 18-count Indictment [48][1] with controlled substance and firearm related offenses. Before the court are: the unresolved portions[2] of the pretrial motions of defendants Melanie Pryor [103], Shawn Pryor [106], and Michael Pryor [108][3]; commensurate portions of defendant Amahdja Greene's omnibus pretrial motion [107];[4] Greene's motion [119] to suppress search warrants for her residence and iPhone; and the government's cross-motions for reciprocal discovery, all of which have been referred to me by

_____

[1]      Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]      Pursuant to my December 12, 2023 Text Order ([143]), the parties advised that the outstanding portions of their motions are: access to Grand Jury minutes and instructions; suppression; dismissal; disclosure of the identities and information related to confidential informants; and joinder. Accordingly, the remaining portions of defendants' motions are deemed resolved.

[3]      Defendants Cameron Lee and Thomas Pryor did not make pretrial motions.

[4]      Greene's motion for suppression of evidence uncovered during an allegedly warrantless search that took place on October 17, 2022 in connection with the government's execution of a search warrant for 2278 Orleans Avenue ([107] at 65 (point XIX of Greene's pre-trial motions)) was the subject of an evidentiary hearing ([123, 136]) and will be considered separately.

District Judge Lawrence J. Vilardo for initial consideration [50].  Oral argument was held on

December 12, 2023.  [142].  For the following reasons, the government's cross-motions for

reciprocal discovery are granted, defendants' non-dispositive motions are granted in part and

denied in part, and I further recommend that defendants' motions to dismiss counts of the

indictment and to suppress be denied.


## BACKGROUND

### A.    Defendants' Motions

#### 1.    Motions for Joinder

Without identifying any specific motions, defendants move to join in each

others' pretrial motions.  Greenman Affidavit [107] at 77, ¶¶ 230-31; Kooshoian Affirmation

[103-1] at 6, ¶¶ 39-40; Michael Pryor motion [108] at 30; Michalek Affidavit [106-1] at 17, ¶¶ 1,

40.  These motions are granted to the extent that the pretrial motions are applicable to the

defendant and he or she has standing to assert such motions.


#### 2.    Motions to Dismiss the Indictment

Defendant Michael Pryor moves the dismiss the Indictment in its entirety "based

completely on evidence derived from illegal electronic surveillance".  [108] at 31.  He requests

dismissal of the Indictment "[s]hould the Court find that the electronic surveillance has been

illegally obtained".  Id.  Because I find that the wiretap evidence was properly obtained, I

recommend that this motion be denied.

- 2 -

Defendant Greene moves for dismissal of Count 1, but on a different basis.  She first argues that the Indictment fails to "claim that each named defendant - individually - either participated in or could have reasonably have foreseen that he or she had entered in a legal agreement to distribute and possess with intent to distribute cocaine or cocaine base in an amount which triggers the mandatory minimum".  Greenman Affidavit [107] at 73, ¶ 222.  She next argues that the Indictment is "silent regarding what, if any, individual quantity determinations were made by the grand jury regarding count 1" (id. at 75, ¶ 227), and requests that the court "order the disclosure of the grand jury instructions on count 1 of the indictment" in order to ensure "that the grand jury made individual findings of probable cause that [defendants] - individually - were responsible for the alleged mandatory minimum quantitative in this case" (id. at 76-77, ¶ 229).

In response, the government argues that "[c]ount 1 of the Indictment is valid on its face" ([115] at 42) and that defendant failed to sustain her burden to "make any specific, factual allegation of either prosecutorial misconduct or impropriety before the Grand Jury which would entitle her to have the Court review any grand jury transcripts in this case".  [115] at 40-41.

I find that the Indictment is sufficiently pled, and that defendants have not made the requisite showing to entitle them to disclosure of grand jury instructions.  "An indictment satisfying the Fifth Amendment must fulfill two requirements: first, it must contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend,

- 3 -

and second, it must enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  United States v. Bastian, 770 F.3d 212, 217 (2d Cir. 2014).

Here, the underlying substantive offense for the conspiracy count is possession with intent to distribute and distributing "40 grams or more of a mixture and substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl) . . . in violation of [21 U.S.C. §§841(a)(1), 841(b)(1)(B), and 841(b)(1)(C)]". Indictment [48].  21 U.S.C. §841(b)(1)(B) provides for mandatory minimum penalties for persons convicted of drug trafficking offenses involving threshold quantities of certain drugs.

"[I]n order for a conviction or sentence on an aggravated offense under [21 U.S.C.] §841(b)(1)(A) or -(b)(1)(B) to be sustainable, drug quantity is an element that must *always* be pleaded and proved to a jury or admitted by a defendant." United States v. Gonzalez, 686 F.3d 122, 130 (2d Cir. 2012) (emphasis in original).   Likewise, "[w]here an indictment alleges a conspiracy involving the weight-related provisions of 21 U.S.C. §841, the Government's burden of proof includes the requirement that a co-conspirator defendant at least could have reasonably foreseen the type and quantity of the substance about which he conspired." United States v. Thompson, 528 F.3d 110, 119 (2d Cir. 2008).

Greene cites no authority for the proposition that an Indictment must specifically plead that the quantity of narcotics was at least reasonably foreseeable to each co-conspirator. While she relies on United States v. Adams, 448 F.3d 492 (2d Cir. 2006) ([51],¶115), that case addressed the proof necessary for conviction, rather than the sufficiency of the Indictment.  *See* id. at 499 ("we require *proof* that this drug type and quantity were at least reasonably foreseeable

to the co-conspirator defendant" (emphasis added)). Nor does she argue that the Indictment fails to protect her against double jeopardy. Therefore, I recommend that her motion to dismiss be denied.

Alternatively, defendants seek "an order requiring the government to disclose the legal instructions on Count 1 that were given to the grand jury which returned the indictment in this case". Greenman Affidavit [107] at 74, ¶223. The government responds that defendants have failed to articulate the "particularized need" required for that disclosure. [115] at 40-41.

"[I]n order for Defendant to obtain disclosure of grand jury instructions, she must demonstrate particularized need." United States v. Smith, 105 F.Supp.3d 255, 260 (W.D.N.Y. 2015). In seeking this disclosure, Greene argues that "there is strong a suggestion that the grand jury was not properly instructed that it could charge an individual defendant only if it found probable cause to believe that he - individually - knew or could have reasonably foreseen a drug distribution conspiracy involving more cocaine and cocaine base which would trigger the mandatory minimum sentence". Greenman Affidavit [107] at 74, ¶225. However, "[i]t is well-settled that hope and speculation are wholly insufficient to overcome the rule of secrecy in grand jury proceedings". Smith, 105 F.Supp.3d at 261. "The only evidence offered by Defendant supporting the proposition that the grand jury was incorrectly instructed is the indictment itself." Id. at 262. However, the fact that the Indictment does not allege that each defendant either participated in the mandatory minimum quantity or that such quantity was reasonably foreseeable, does not create a particularized need. See id. Therefore, I recommend that this portion of defendants' motion be denied.

3.    **Motions to Suppress Title III Evidence**

The defendants all requested suppression of the Title III wiretap evidence on a variety of grounds.  Kooshoian Affirmation [103-2] at 3-10;  Michalek Affidavit [106-1] at 21-34; Greenman Affidavit [107]  at 46-63; Michael Pryor motion [108] at 15-25.  Given that I have granted the defendants' motions for joinder, and that the government does not challenge the standing of any defendant to contest this evidence, I will treat their various motions and arguments as if made in a single motion.

The government obtained Title III orders on August 11, 2022 for telephone number (716) 303-0896 ("target telephone no. 1", used by Michael Pryor)[5]; on October 5, 2022 for target telephone no. 1 and telephone numbers (716) 716-463-4808 ("target telephone no. 2", used by defendant Cameron Lee) and (716) 314-3129 ("target telephone no. 3", used by Shawn Pryor)[6]; and on October 13, 2022 for target telephone no. 3.[7]  Each Order was signed by District Judge John L. Sinatra, Jr. and was supported by an affidavit from Federal Bureau of Investigation ("FBI") Special Agent ("SA") Curtis R. Middlebrooks.

"The defendant bears a significant burden when seeking to suppress an authorized wiretap: once the authorizing judge has made the requisite probable cause and necessity

---

[5]    22-MR-314

[6]    22-MR-314

[7]    22-MR-314.  The government submitted this amended application because the application and order dated October 5, 2022 contained a typographical error in the target telephone no. 3's international mobile subscriber identity ("IMSI") number.

determinations, any court reviewing those determinations must grant 'considerable deference' to the authorizing judge."  United States v. Rodriguez-Perez, 2012 WL 3578721, *6 (S.D.N.Y. 2012).  In reviewing the issuance of a wiretap order, the court does not conduct a *de novo* review; instead, it determines whether "the facts set forth in the application were minimally adequate to support the determination that was made".  United States v. Yannotti, 541 F.3d 112, 124 (2d Cir. 2008).  This showing is "'tested in a practical and commonsense fashion'".  United States v. Concepcion, 579 F.3d 214, 218 (2d. Cir. 2009) (*quoting*  S.Rep. No. 90–1097 (1968)).  The Government does not contest defendants' assertions that they have standing to challenge the wiretap warrants.

### a.    Necessity

Defendants move to suppress the Title III evidence in this case by arguing that the applications failed to establish necessity as required by 18 U.S.C. §2518(1)(c).  Kooshian Affirmation [103-2] at 3-5, 8-9;  Michalek Affidavit [106-1] at 28-34; Michael Pryor motion [108] at 17-20; Greenman Affidavit [107] at 54-59.  Title III requires that an application for the interception of electronic communications include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous".  18 U.S.C. §2518(1)(c).  "[G]eneralized and conclusory statements that other investigative procedures would prove unsuccessful will not satisfy Title III."  Concepcion, 579 F.3d at 218.  However, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance. The statute only requires that the agents inform the authorizing judicial officer of the nature and

progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods". Id.

"[T]he Government meets its burden by submitting a wiretap application supported by an affidavit describing how traditional investigative techniques had failed to provide more than 'a limited picture' of a narcotics organization." United States v. Valdez, 1991 WL 41590, *2 (S.D.N.Y.), aff'd, 952 F.2d 394 (2d Cir. 1991). "[W]iretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation". United States v. Steinberg, 525 F.2d 1126, 1130 (2d Cir. 1975). Additionally, "[w]here there is a conspiracy at work, the need for a wiretap may be compelling:  the clandestine nature of alleged conspiracies makes them relatively less susceptible to normal investigative techniques". United States v. Kazarian, 2012 WL 1810214, *3 (S.D.N.Y. 2012).

### i.    August 11, 2022 Application

SA Middlebrooks' Affidavit ([146] at 22-89) submitted in support of the initial August 11, 2022 Title III application to intercept communications over target telephone no. 1, utilized by defendant Michael Pryor, acknowledged that the "[n]ormal investigative techniques" utilized had "developed substantial evidence against **MICHAEL PRYOR**" (id., ¶70), but those techniques had not yielded "the full scope of the roles of other members of the organization have not yet been fully identified, in particular, their distribution network, the method of supply, the means of financing the purchase of narcotics, or the location(s) where fentanyl, cocaine base, cocaine and proceeds are stored, and the method(s) utilized to dispose of those proceeds." (id.).

Beyond these generalized representations, SA Middlebrooks described why trash pulls, mail cover requests, and grand jury subpoenas were not used in the investigation (id., ¶¶ 77, 90, 98). He detailed the information obtained through the use of confidential human sources ("CHS") (id., ¶¶ 15-28), but explained that the continued use of CHSs proved to be problematic, or unlikely to reveal additional information (id., ¶ 73). For instance, CHS-1 had relocated to Louisiana. Id., ¶ 15. Moreover, CHS-1 was able to provide information relevant to the various controlled narcotics and firearm purchases he engaged in, but was not able to provide information about sales to other customers, or information concerning the "source of any drug/firearm supply" or "the hierarchy level within the criminal enterprise", nor was CHS-1 "in a position to make controlled purchases of narcotics . . . in amounts that are more than user quantities". Id. Likewise, CHS-2 "provided information regarding this criminal enterprise, they have not been able to obtain identities of the source of drug supply, stash house locations utilized by the criminal enterprise, all methods used by the criminal enterprise to conceal drug proceeds, and meithods used to traffic the narcotics into the Western District of New York". Id. He further explained that CHSs "normally have limited information, either furnished by a subject or learned secondhand from others". Id., ¶72.

SA Middlebrooks also acknowledged that the use of controlled purchases by CHS- 1 were "not effective in meeting the goals" of the investigation. Id., ¶ 78. For example, "[s]urveillance conducted by the [Niagara Falls Police Department] and [Safe Streets Task Force] during and after the controlled purchases have not revealed where the TARGET SUBJECT is storing drugs, weapons, and drug proceeds". Id. During controlled purchases,

CHS-1 was "unable to enter or identify the residences belonging to **MICHAEL PRYOR**", nor did defendant reveal to CHS-1 "drug/firearm suppliers, or drug firearm proceeds or stash locations". Id. SA Middlebrooks stated that he believed "additional purchases from **MICHAEL PRYOR** would not lead to identifying [his] source of supply." Id., ¶ 80. Further, physical surveillance both before and after each controlled purchase had been of limited use:

> "Prior to and after each of the controlled purchases from **MICHAEL PRYOR, MICHAEL PRYOR** has utilized countersurveillance methods, to include driving at a high rate of speed and driving around the meet location, several times and taking different routes to do so. Special agents and investigators, unfortunately, do not have the ability to change their surveillance vehicles for each controlled purchase. Thus, your Affiant believes that **MICHAEL PRYOR** and others in the organization may start to recognize the same vehicles each time a controlled purchase is made from **MICHAEL PRYOR.**"

Id., ¶ 79. SA Middlebrooks noted that physical surveillance "has been helpful to the investigation", but that it had thus far failed to identify "the sources of the drugs acquired and distributed by **MICHAEL PRYOR**, or the locations where the drug shipments are distributed and where the drugs and money are stored". Id., ¶ 82.

For much the same reasons as use of CHS-1 to make controlled purchases had limitations, SA Middlebrooks stated that introduction of an undercover agent ("UC") to the investigation would face the same limitations. "Specifically, the target subjects have not shown a willingness to discuss stash house locations, methods being utilized to conceal drug proceeds, methods of trafficking the narcotics/firearms into the Western District of New York, the source of drug/firearm supply, or the hierarchy of the Crip Gang/criminal enterprise as it relates to the [WDNY] and other states where members of this criminal enterprise may reside." Id., ¶ 85.

- 10 -

In similar detail, SA Middlebrooks described why law enforcement's use of seven pole cameras, search warrants, a vehicle tracker warrant, interviews, and a toll analysis and pen register/tap and trace device were not sufficient to advance the goals of the investigation (id., ¶¶ 74-76, 86-89, 91-95, 96-97).

### ii.    October 5, 2022 Application

In his October 5, 2022 Affidavit ([147] at 25-124), SA Middlebrooks reiterated much of what was contained in his initial affidavit concerning the use, limitations, and difficulties with the traditional investigative techniques utilized. Id., ¶¶ 148-66. He acknowledged that the initial wiretap for telephone no. 1 had yielded significant information, and outlined a great deal of it in paragraphs 19-35, but noted that the investigation had still not achieved all the goals of the investigation:

> "The Court's August 11, 2022 Order has been beneficial to this investigation; however, the interception of **MICHAEL PRYOR**'s electronic and wire communications have not accomplished all the goals of the investigation. During the first interception period, investigators have learned that **MICHAEL PRYOR** obtains a portion of his narcotics from **CAMERON LEE** and **SHAWN PRYOR**. This has not, however, disclosed who else **MICHAEL PRYOR** obtains narcotics from or from whom he obtains firearms. In addition, the first interception period has not revealed who supplies **CAMERON LEE** and/or **SHAWN PRYOR** with narcotics and firearms."

Id. at 70, ¶70. In addition, he provided additional information learned from other investigative techniques, including:

- Information obtained from two additional CHSs (id., ¶¶ 17-18, 68);

- Additional physical surveillance conducted in conjunction with information intercepted through the initial wiretap (id., ¶ 36);

- 11 -

- Controlled narcotics purchases utilizing CHS-4 and CHS-6 (id., ¶¶ 37-42);

- Undercover investigator narcotics purchases utilizing a UC in conjunction with CHS-5 (id., ¶¶ 43- 63); and

- Continued analysis of pen register, tap and trace, and toll analysis information related to target telephone nos. 2 and 3 (id., ¶¶ 64-66).

As with his first application, Agent Middlebrooks discussed the need for continued interception of target telephone no. 1, and the need for interception of target telephones no. 2 and 3 by discussing the limitations of each investigative technique utilized, and of techniques that had not been utilized, but that had been considered.  Id., ¶¶ 68-113.

### iii.    October 13, 2022 Application

The October 13, 2022 amended application [148], is largely identical to the October 5, 2022 application, as it was submitted to correct a typographical error that had prevented the government from collecting information for target telephone no. 3 pursuant to the October 5, 2022 order.  Id. at 2, ¶3, n. 1.

Relying heavily on United States v. Lilla, 699 F.2d 99 (2d Cir. 1983) and United States v. Concepcion, 579 F.3d 214 (2d Cir. 2009), defendants argue that none of the wiretap orders satisfied the necessity requirement because "[m]any of the objectives and goals of the investigation have been met through conventional investigative techniques, specifically through the use of confidential informants, pen registers, [tap] and trace device and surveillance".  Michalek Affidavit [106-1]  at 32, ¶ 97; *see also* Kooshoian Affirmation [103-2] at 3-9; Greenman Affidavit [107]  at 54-64; Michael Pryor motion [108] at 17-20.

These arguments are not borne out by the applications. SA Middlebrooks provided specifics about the use, limitations, and difficulties associated with the use of confidential sources, physical surveillance, undercover agents, and pen/tap and trace devices, among several other investigative techniques utilized throughout the investigation. While some of his assessments of the utility of traditional investigative techniques may appear generalized, "[t]he fact that similar drug trafficking investigations often entail similar analyses of the viability of various investigative techniques does not alter the necessity of a wiretap in one particular case. Indeed, it should come as no surprise that the facts supporting the conclusion that the alternative methods would be unavailing often are similar from one narcotics operation to another". United States v. Parris, 2014 WL 2745332, *9 (S.D.N.Y. 2014).

Further, "wiretaps are permissible where normal investigative techniques are able to uncover evidence of discrete crimes by members of a criminal enterprise but not able to uncover evidence of the scope of the enterprise as a whole". United States v. Barrera, 950 F.Supp. 2d 461, 470-71 (E.D.N.Y. 2013) (citing cases). See United States v. Hinton, 543 F.2d 1002, 1011-12 (2d Cir. 1976) ("even though . . . officers may have garnered sufficient information without the use of wiretaps to support an indictment against Matthews, and possibly against a few others, there was every reason to believe that additional co-conspirators were involved who could not be successfully investigated without wiretapping. The order instituting wiretapping was thus not in error"); United States v. Rajaratnam, 2010 WL 4867402, *21 (S.D.N.Y. 2010) ("the fact that the SEC's investigation had identified certain sources did not

preclude a showing that a wiretap was necessary to confirm those sources and fully uncover Rajaratnam's network of sources").

  As discussed above, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance. The statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods". Concepcion, 579 F.3d at 218. That was done here.

  SA Middlebrooks' affidavits contained far more specific information about the investigative techniques used, and the limitations of the information obtained by utilizing them, than the affidavit at issue in Lilla:

> "[T]he affidavit [did] not reveal what, if any, investigative techniques were attempted prior to the wiretap request. Instead, the affidavit merely asserted that 'no other investigative method exists to determine the identity' of individuals who might have been involved with Lilla. The affidavit fails to specify the facts upon which Cook based his conclusion; there is no indication why simple surveillance of Lilla's place of work or his home would not have been useful. The affidavit does not enlighten us as to why this narcotics case presented problems different from any other small-time narcotics case; if anything, Lilla operated more openly than most and with less care in terms of evading detection."

Lilla, 699 F.2d at 104. By contrast, SA Middlebrooks outlined in each application the efforts taken to date and explained the limitations of investigative techniques the government had and had not utilized. Moreover, SA Middlebrooks' affidavits were significantly more detailed than the affidavit at issue in Concepcion, which the Court found "at least 'minimally adequate to support' [the] initial decision to grant the wiretap." Concepcion, 579 F.3d at 219-20.

- 14 -

Therefore, I conclude that the facts set forth in the applications were sufficient to demonstrate that the interception of wire communications was necessary to attain the goals of the investigation, and I recommend that this portion of the motions be denied.

**b.     False Statements**

Defendants request a <u>Franks</u>[8] hearing concerning allegedly "affirmative misrepresentations and material omissions contained in the affidavits submitted on August 11, 2022 and October 13, 2022, in support of the wiretap applications for Michael Pryor's phone". Kooshoian Affirmation [103-2] at 10, ¶ 103.  *See also* Michalek Affidavit [106-1] at 24-28, ¶¶ 65-81; Greenman Affidavit [107] at 58, ¶ 164.  Specifically, defendants argue that SA Middlebrooks "falsely stated [in his August 11, 2022 affidavit] that executing a search warrant at Michael Pryor's residence would not meet the goals of the investigation because . . . executing search warrants would not help investigators identify the narcotics, suppliers and location of drugs". Michalek Affidavit [106-1]  at 25-26, ¶ 70, *citing* Middlebrooks August 11, 2022 Affidavit, ¶89.  *See also* Kooshoian Affirmation [103-2] at 10, ¶¶104-105. Defendants contrast this statement with the statement Middlebrooks made in his October 13, 2022 affidavit in support of his application for a search warrant for 2778 Orleans Avenue that the search warrant would "assist investigators in identifying narcotics suppliers and locations of drugs".  Michalek Affidavit [106-1]  at 26, ¶ 71.

---

[8]     <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

A defendant is entitled to a <u>Franks</u> hearing where he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause". <u>Franks</u>, 438 U.S. at 155-56. Defendants' arguments, which are not grounded in an evidentiary showing, are insufficient to meet their burden of establishing their entitlement to a <u>Franks</u> hearing. I also conclude that defendants have not established their entitlement to discovery to support that motion. While they rely on <u>United States v. Salemme</u>, 978 F.Supp. 343 (D. Mass. 1997), defendants have not made the evidentiary showing in this case that was at issue in <u>Salemme</u>. There, the court received evidence of what it considered to be material omissions and misleading information concerning the necessity showing in a wiretap application and, based upon that showing, directed that additional disclosures be made by the government. 978 F.Supp. at 347-55.

A similar evidentiary showing has not been made here. Simply, "<u>Salemme</u> does not support a routine pretrial discovery request for any materials used in the preparation of Title III applications as sought by Defendants in [this] case". <u>United States v. Chimera</u>, 201 F.R.D. 72, 80-81 (W.D.N.Y. 2001).

Moreover, SA Middlebrooks' statements in the August 11, 2022 wiretap application and the October 13, 2022 search warrant application are not even contradictory, let alone an affirmative misrepresentation or a material omission. First, defendants do not cite the entirety of SA Middlebrooks' statement in paragraph 89 of his August 11, 2022 affidavit. There, he states, "[w]hile investigators have considered executing search warrants at **MICHAEL**

- 16 -

**PRYOR's** residences, it is believed that executing search warrants *at this point in the investigation* would not meet the goals and objectives of this investigation."  Middlebrooks August 11, 2022 Affidavit at 56, ¶89 (emphasis added).  SA Middlebrooks did not state that executing a search warrant at Michael Pryor's residence would <u>never</u> assist investigators in meeting the goals and objectives of the investigation, or that such a warrant would not be useful once at least some additional goals of the investigation were met.  Given the additional information learned between August 11 and October 13, 2022 through the wiretap orders entered August 11 and October 5, 2022, as well as from the continuing investigation, it is logical to conclude that the perceived effectiveness of executing a search warrant upon 2778 Orleans Avenue had changed.  Therefore, I recommend that this motion be denied.

     **c.**    **Minimization**

      Title III requires that the interception of communications "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception". 18 U.S.C. §2518(5).  "Surveilling agents are not forbidden from intercepting all non-relevant conversations, but must minimize such interceptions".  <u>United States v. Parrilla</u>,  2014 WL 1621487, *9  (S.D.N.Y. 2014).  "Compliance with the minimization requirement is determined by an analysis of the reasonableness of the surveilling agents' conduct based on the totality of circumstances."  <u>United States v. Zemlyansky</u>, 945 F.Dupp.2d 438, 477 (S.D.N.Y. 2013).

      Here, the government provided statistics concerning the minimized conversations. <u>See</u> Exhibit A to Government's Response to Greene's motion [115-1] at 1-3; *see also* Exhibit A

- 17 -

to Government's Response to Michael Pryor's motion [114-1] at 1-3. The government explained that, between August 11, 2022 and September 10, 2022, 51% of calls over 2 minutes in duration were minimized with respect to target telephone no. 1. [115] at 27. Between October 5, 2022 and October 21, 2022, 37% of calls over 2 minutes were minimized. Id. With respect to target telephone no. 2 during this time period, 87% of such calls were minimized. Id. With respect to target telephone no. 3 during this time period, 41% of such calls were minimized. Id. In addition, the government "provided specific written instructions to law enforcement personnel regarding minimization", submitted ten-day progress reports to Judge Sinatra during the period of interception, and held a minimization meeting during which personnel could ask questions concerning the minimization process. See [114] at 23; [115] at 27-28.

Defendants "request[] an evidentiary hearing" to ensure the minimization requirements were met. Michael Pryor motion [108] at 23. Further, Greene argues that, while they "lack the manpower" to "segregate the minimized from the non-minimized conversations", they have "attempted to spot check the phone calls" and "because we believe that many of the phone calls were not minimized, especially the phone calls between the targets of the investigation and defendant [Greene] who was never a target of the investigation nor was she mentioned in the eavesdrop order, any conversations between [Greene] and any of the other individuals named herein must be suppressed". Greenman Affidavit [107] at 67-68, ¶¶ 197-98.

No further argument or evidentiary support is offered in support of these skeletal motions. The government, through its submissions, has sustained its "burden to show good faith compliance with minimization requirements". Zemlyansky, 945 F.Supp.2d at 477. The burden

then "shifts to the defendant to show that, despite a good faith compliance with the minimization requirements, a substantial number of non-pertinent conversations have been intercepted unreasonably". Id. Defendants have not challenged the information disclosed by the government in response to this motion or claimed that it is insufficient. Nor has Greene identified a single non-minimized, non-pertinent conversation. However, even if she had, "the defendant who is successful in making this argument is entitled" only to "suppression of those [improperly intercepted] conversations". United States v. Rastelli, 653 F.Supp.1034, 1051 (E.D.N.Y. 1986). Since "a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace", United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), I recommend that this motion be denied.

      **d.**    **Sealing**

      Title III further requires that "[i]mmediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed upon his directions". 18 U.S.C. § 2518(8)(a). Sealing "within one or two days" is deemed "immediate". United States v. Massino, 784 F.2d 153, 158 (2d Cir. 1986). When sealing is delayed between three and five days, the government is required to explain the delay to the court. Id.

      Here, the August 11, 2022 wiretap order expired on September 12, 2022. [115] at 30. The government submitted to the court on September 14, 2022 the recordings of the intercepted calls, and copies of the intercepted text messages. The government explained that the reason for the delay was that the wire interceptions were FedExed to Buffalo from Boston, and

the electronic communications were FedExed to Buffalo from Quantico, Virginia. Id.; *see also* Sealing Application and Order dated September 14, 2022 [146-2] and [146-3]. The recordings from the October 5 and October 13, 2022 wiretap orders were sealed on October 20 and October 27, 2022, respectively: prior to the expiration of these orders. Id.; *see also* Sealing Applications and Orders dated October 20, 2022 [147-2] and [147-3] and October 27, 2022 [148-2] and [148-3].

Defendants "request[] an evidentiary hearing" to ensure the sealing requirements were met. Michael Pryor motion [108] at 24; *see also* Greenman Affidavit [107] at 70. Again, defendants fail to challenge the sufficiency of the government's explanation for the short delay here. Since "a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace", Zannino, 895 F.2d at 17, I recommend that this motion be denied.

### 4.    Motions to Suppress Search Warrant for 2778 Orleans Avenue

Defendants Melanie and Shawn Pryor move to suppress the search warrant for their residence at 2778 Orleans Avenue, issued by Magistrate Judge Schroeder on October 13, 2022 [149] because it relied upon intercepted telephone conversations obtained pursuant to the August 11, 2022 wiretap warrant. Michalek Affidavit [106-1] at 34, ¶¶ 111-12; Kooshoian Affirmation [103-2] at 10-11, ¶¶ 107-108. Because I have recommended denial of the motions to suppress the wiretap evidence, I recommend that this motion be denied as well.

- 20 -

    **5.**    **Motion to Suppress Search Warrant for 2954 9th Street and Apple iPhone**

    Defendant Greene moves separately to suppress the October 20, 2022 search warrant for her residence at 2954 9th Street[9] [150], and the November 4, 2022 search warrant for her pink Apple iPhone[10] [151], which was seized from her residence pursuant to the October 20, 2022 search warrant. [119] at 2. Greene challenges the warrants on three grounds: lack of probable cause ([113], ¶¶ 19, 26, 29, 60); lack of particularity and overbreadth (id, ¶¶ 26, 29, 36-49, 56, 59, 72, 75); and overbroad execution (id. ¶¶ 73-74). The government states that it has not searched Greene's iPhone "due to security protections" on the phone. ([120] at 2, 8).

    For the following reasons, I recommend that this motion be denied.

    **a. Probable Cause**

    The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause is not a high bar." District of Columbia v. Wesby, 583 U.S. 48, 57 (2018). In determining the existence of probable cause, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability

---

[9]    22-mj-183, issued by Magistrate Judge Schroeder.

[10]    22-mj-5094, issued by Magistrate Judge Roemer.

that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

Since "[a] search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant", United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993), a defendant arguing that "that a warrant was issued on less than probable cause faces a heavy burden". Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991). However, that deference "is not boundless . . . . [R]eviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." United States v. Leon, 468 U.S. 897, 914-15 (1984).

The search warrant application for 2954 9th Street was supported by the Affidavit of SA Middlebrooks. The portion related to defendant's residence (October 20, 2022 Middlebrooks Affidavit [150-1] at 20-24, ¶¶ 22-26) relies primarily upon phone conversations between Greene and Michael Pryor intercepted on October 6, 2022 and October 18, 2022 pursuant to the wiretap warrants. Id. at 20-24, ¶¶ 22-24. Based on his training, experience, and involvement with the investigation, SA Middlebrooks explained his belief that the subject of the calls were firearms being held by Greene for defendant Lee, proceeds from narcotics sales, and money owed to Lee as the result of his narcotics sales. Id. at 23, ¶ 24. The warrant authorized the search of 2954 9th Street (Attachment A-2 to Middlebrooks Affidavit (id. at 30)) for "[i]tems comprising evidence of, or property designed for use, intended for use, or used in committing violations of [18 U.S.C. §§ 841(a)(1), 844(a)), 846, and 856(a)(1)]" consisting of, *inter alia*:

"[c]ocaine and heroin"; "[r]ecords, items and documents reflecting purchases of cocaine, and/or travel in furtherance of narcotics trafficking"; "[b]ank account records . . . . showing payment, receipt, concealment, transfer, or movement of money generated from the sale of cocaine"; "[f]irearms"; "[c]ash"; "[c]ellular telephones . . . smart cellular telephones . . . and other communication devices" (Attachment B to Middlebrooks Affidavit (id. at 31)).

    The November 4, 2022 application for the search of Greene's iPhone [151-1] was supported by another affidavit from SA Middlebrooks ([151-1] at 2-17) that incorporated by reference, and attached, his October 20, 2022 affidavit submitted to Judge Schroeder in support of the search warrant for Greene's residence (id. at 18-50).  The November 4, 2022 search warrant authorized the search of Greene's phone (Attachment A-2 to Middlebrooks Affidavit (id. at 107)) for "records . . . that relate to violations of [21 U.S.C. §§ 841(a)(1), 844(a), 846, and 856(a)(1)" consisting of, *inter alia*: "[t]elephone calls . . . photographs and/or videos regarding firearm possession, as well as drug trafficking"; "SMS and MMS messages, and any other wire and electronic communications relating to controlled substances and virtual currency"; "[a]ny information related to sources of controlled substances"; and "[a]ll bank records . . . and other financial records relating to violations of [21 U.S.C. §§ 841(a)(1), 844(a), and 846]" (Attachment B to Middlebrooks Affidavit (id. at 111)).

    Although Greene argues that probable cause for the warrants was lacking ([119] at 5, ¶ 19, 26, 29, 60), she points to no specific deficiency.  Nor do I discern any.  As the government notes, SA Middlebrooks' affidavits outline telephone conversations between Greene and codefendants appearing to suggest she had possession of firearms and drug proceeds. [120]

at 4-5.  Further, Greene also appeared to have knowledge concerning who owed Lee debts related to his drug trafficking activities.  Id. at 5.

In any event, I agree with the government that even if probable cause was lacking, the evidence obtained from the search warrants would still be admissible under the good faith exception of Leon, supra. [120] at 9-10.  "When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant." Herring v. United States, 555 U.S. 135, 142 (2009).

"The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011).  There are "four circumstances where an exception to the exclusionary rule would not apply: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." Id.

The warrants here were not so facially deficient or so lacking in probable cause that reliance upon them would have been objectively unreasonable. Nor are there any claims that Magistrate Judges Schroeder or Roemer were misled in any fashion or that he abandoned their judicial role.  Therefore, even if the search warrants were determined to be unsupported by probable cause, I would conclude that the good faith exception applies.

### b.  Particularity & Overbreadth

"The warrants clause [of the Fourth Amendment] both requires particularity and forbids overbreadth." <u>United States v. Drago</u>, 2019 WL 4364644, *7 (E.D.N.Y.), <u>adopted</u>, 2019 WL 3072288 (E.D.N.Y. 2019).  Since the particularity requirement guards against "general warrants" that authorize an "exploratory rummaging in a person's belongings", <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467 (1971), it requires the warrant to "enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize". <u>United States v. George</u>, 975 F.2d 72, 75 (2d Cir. 1992). *See also* <u>United States v. Walker</u>, 2023 WL 3451419, *3 (2d Cir. 2023) (Summary Order) ("[t]he Fourth Amendment does not require a perfect description of the data to be searched and seized").

 "The particularity requirement has three components": (1) "a warrant must identify the specific offense for which the police have established probable cause"; (2) "a warrant must describe the place to be searched; and (3) "the warrant must specify the items to be seized by their relation to designated crimes". <u>United States v. Galpin</u>, 720 F.3d 436, 445-46 (2d Cir. 2013).  Thus, "[i]n general, warrants that limit a search to evidence relating to a particular crime, and which provide a list of examples as a means of limiting the items to be seized, are upheld when confronted with a particularity challenge." <u>United States v. Pugh</u>, 2015 WL 9450598, *22 (E.D.N.Y. 2015). *See also* <u>United States v. Riley</u>, 906 F.2d 841, 845 (2d Cir. 1990) ("[o]nce a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated

because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category").

Although overbreadth is a distinct concept, it "represents, in a sense, an intersection point for probable cause and particularity principles: it recognizes, in pertinent part, that a warrant's unparticularized description of the items subject to seizure may cause it to exceed the scope of otherwise duly established probable cause." United States v. Disla Ramos, 2022 WL 17830637, *9 (S.D.N.Y. 2022).

Greene argues that these were "general" warrants "because the authority to seize the documents and to search computers and the like was overbroad and did not provide the agent with a direction as to what they may seize". [119] at 14, ¶ 51. She contends that the "warrants did not list specific items which the officers were allowed to seize and the description in the search warrant itself for the defendant's home and devices was 'overbroad and provided the officers with no judicial limit on the scope of their search, especially as related to the seizure of electronically stored notes and records tending to identify criminal conduct.'" Id. at 16-17, ¶ 59, quoting United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010).

In Rosa, the Second Circuit held that a warrant was overbroad because it authorized law enforcement to search a residence for any electronic equipment or digital information "which would tend to identify criminal conduct". Id. at 58. Likewise, in George, supra, also cited by Greene ([119], ¶¶58, 66, 71), the court held that "[a]bsent some limitation curtailing the officers' discretion when executing the warrant, the safeguard of having a magistrate determine the scope of the search is lost. As a consequence, authorization to search

for 'evidence of a crime,' that is to say, any crime, is so broad as to constitute a general warrant". 975 F.2d at 76.

The warrants here are unlike those in Rosa and George.  Each of the warrants limited law enforcement's authorization to search for and seize evidence of specific drug trafficking offenses, and identified specific categories of information related to those crimes that were encompassed by the warrant, such as "[b]ank account records . . . . showing payment, receipt, concealment, transfer, or movement of money generated from the sale of cocaine" (Attachment B to October 20, 2022 Middlebrooks Affidavit ([150-1] at 31)) and "[t]elephone calls . . . photographs and/or videos regarding firearm possession, as well as drug trafficking" (Attachment B to November 4, 2022 Middlebrooks Affidavit ([151-1] at 111)).  Further, the warrant for the residence specifically authorized seizure of "cellular telephones" and "smart cellular telephones".  (Attachment B to October 20, 2022 Middlebrooks Affidavit ([150-1] at 31)).

Because the seizure of an electronic device "can give the government possession of a vast trove of personal information about the person to whom the [device] belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure", United States v. Ganias, 824 F.3d 199, 217 (2d Cir. 2016), "the particularity requirement assumes even greater importance".  Galpin, 720 F.3d at 446.  However, to the extent that Greene is arguing that the warrant's directive to search the entirety of her electronic device was overbroad or lacking particularity, I disagree.

- 27 -

A warrant that authorizes "law enforcement agents to access all the data on the [an electronic device] does not automatically render it overbroad". United States v. Dawkins, 2019 WL 2464924, *7 (S.D.N.Y. 2019). *See also* United States v. Saipov, 2019 WL 3024598, *7 (S.D.N.Y. 2019) ("the fact that the Search Warrant contemplates that the entire contents of the Cell Phones" is an "unremarkable" approach to searching electronic devices). Since "it will often be impossible to identify in advance the words or phrases that will separate relevant files or documents before the search takes place, because officers cannot readily anticipate how a suspect will store information related to the charged crimes", United States v. Ulbricht, 858 F.3d 71, 102 (2d Cir. 2017), abrogated in part on other grounds by Carpenter v. United States, 585 U.S. __, 138 S. Ct. 2206 (2018), the Second Circuit has "not required specific search protocols or minimization undertakings as basic predicates for upholding digital search warrants". Galpin, 720 F.3d at 451.

Likewise, "[c]ourts routinely uphold warrants to search entire electronic accounts when there is probable cause to believe they contain evidence of a crime". United States v. Toth, 2022 WL 16837972, *3 n. 3 (W.D.N.Y.), adopted, 2022 WL 16836568 (W.D.N.Y. 2022) (citing cases); United States v. Vogelbacher, 2021 WL 1017126, *3 (W.D.N.Y.), adopted, 2021 WL 978848 (W.D.N.Y. 2021) (Vilardo, J.) ("courts routinely uphold warrants to search entire electronic accounts"). *See also* United States v. Whitcomb, 2021 WL 5150040, *6 (D. Vt. 2021) (when addressing social media accounts "courts in this circuit repeatedly have recognized that avoiding the intrusiveness of a search while maintaining its efficacy is largely infeasible . . . . Once probable cause is established, permissible searches have included the entire contents of a

defendant's Facebook account even if the account also contained information unrelated to criminal activity").

Finally, to the extent any of Greene's remaining arguments are rooted in claims of overbreadth, she fails to point to any particular authorization given by the warrants to search for and seize that was not supported by probable cause.

### c.  Overbroad Execution

"[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search." United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988).  It is only when "those executing the warrant acted 'in flagrant disregard' of the warrant's terms", that all seized evidence will be suppressed. Id.

Greene asks the government "to provide to the defense a full and entire inventory of every item seized and taken from Ms. Greene's cell phone".  Greenman Affidavit [119] at 16, ¶ 57.  She argues that she has not been provided "with a full inventory of items which were seized", and "[t]herefore request[s] a hearing as to the appropriate execution of the warrant and request[s] . . . suppression of everything seized because the warrant execution amounted to nothing less than mere rummaging". Id.  Because the government has not searched Greene's iPhone, this portion of the motion is moot.

### 6.    Motions for Bills of Particulars

Defendants move for a variety of particularization.  Kooshoian Affirmation [103], ¶¶4-5; Michalek Affidavit [106-1] , ¶¶ 4-5; Greenman Affidavit [107] , ¶¶ 23-37; Michael Pryor motion [108] at 12-14.  Fed. R. Crim. P. ("Rule") 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense".  United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).  "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights".  United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y. 2014) (Scott, M.J.).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful."  United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002).  A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense".  United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form".  United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998).  See United States v. Messina, 2012 WL 463973,

*10 (E.D.N.Y. 2012) ("In determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery").  "Whether to grant a bill of particulars rests within the sound discretion of the district court."  United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

"[T]here is a special concern for particularization in conspiracy cases." United States v. Palmer, 2012 WL 2953659, *3 (W.D.N.Y.2012) (citing United States v. Davidoff, 845 F.2d 1151 (2d Cir.1988)).  Thus, "a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge".  Barnes, 158 F.3d at 666.

Here, the Indictment alleges that "[b]etween in or before June 2022 . . and on or about October 21, 2022, in the Western District of New York, and elsewhere, the defendants . . . **MICHAEL PRYOR, SHAWN PRYOR** . . ., **MELANIE PRYOR,** and **AHMADJA GREEN** . . . did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown, to possess with intent to distribute, and to distribute, 40 grams or more of a mixture and substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance; heroin, a Schedule I controlled substance; and cocaine and cocaine base, both Schedule II controlled substances, in violation of [21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C)".  Indictment [48].

In opposition, the government argues that each defendant "fails to articulate *any* facts upon which the Court could conclude the defendant has met his burden of establishing

need".  [112] at 6 (emphasis in original); *see also* [113] at 6; [115] at 6; and [114] at 12.  Further, the "affidavit[s] in support of the criminal complaint[s] provide[] the defendant[s] with substantial information regarding the government's case" and the "government has also provided the defendant with copies of the intercepted wire and electronic communications, FBI 302s detailing seizures made during the investigation, wiretap applications and affidavits and search warrant affidavits".  Id.  Finally, certain of the particularization sought are not within the proper scope of a bill of particulars.  Id.

      "[T]he government need not specify when a particular defendant joined the conspiracy, nor is it required to specify what role each defendant played in the conspiracy. . . . Similarly, to the extent that defendants seek a description of the particular acts for which he or she is being held responsible, or a listing of the acts of which each defendant had knowledge, the case law is clear that the government is not required to provide the information." United States v. James, 2007 WL 914242, *26 (E.D.N.Y. 2007).  *See* United States v. Nicolo, 523 F. Supp. 2d 303, 317 (W.D.N.Y. 2007), aff'd, 421 Fed. App'x 57 (2d Cir. 2011) (Summary Order) ("[a]s a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars.  More specifically, details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial . . . . Likewise, the names of unindicted coconspirators need not be provided"); United States v. Chen, 2007 WL 2244213, *10 (S.D.N.Y. 2007) ("[t]he Second Circuit . . . ha[s] routinely denied requests for Bills of Particulars concerning the 'wheres, whens, and with whoms' of the crime charged").

Nevertheless, "if necessary to give the defendant enough information about the charge to prepare his defense, '[a bill of particulars] will be required even if the effect is disclosure of evidence or of theories.'" Barnes, 158 F.3d at 665 (*quoting* 1 Charles Alan Wright, Federal Practice and Procedure §129 (1982)).  Although the Indictment only provides the "bare bones" of the alleged conspiracy, it is not alleged to be an expansive conspiracy covering a number of years.  The alleged conspiracy covers five months.  Coupled with the limited scope of the alleged conspiracy, the government details various materials related to its investigation of the alleged conspiracy that have been provided to defendants. Defendants do not dispute the government's assertion that these disclosures are sufficient to permit them to prepare for trial.

Nor, as the government notes, does any defendant attempt to demonstrate why the requested particularization is necessary.  [112] at 7; [113] at 7; [114] at 13; [114] at 8.  Under these circumstances, these motions are denied.

### 7.    Motions for Identity of Informants

Defendants move for disclosure of the identities of all informants, plus "their criminal records, addresses and telephone numbers[,] and records of any 'deals' made in exchange for their cooperation".  Kooshoian Affirmation [103] at 6.  Defendants also request "production of the DEA's internal" file for each informant.  Kooshoian Affirmation [103] at 8. *See also* Michalek Affidavit [106-1]  at 4-7, ¶¶ 6-13; Greenman Affidavit [107]  at 14-21, ¶¶ 38-58; Michael Pryor motion [108] at 27-29.

The government is not required to provide early disclosure of the identities of informants unless "an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause". Roviaro v. United States, 353 U.S. 53, 60–61 (1957). "The defendant bears the burden of showing the need for disclosure of an informant's identity . . . and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997).

"The defendant is generally able to establish a right to disclosure where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.1988). Disclosure is not required if a defendant fails to show that "the testimony of the informant would . . . [be] of even marginal value to the defendant's case". Id. "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." Fields, 113 F.3d at 324.

Defendants argue "that the informants are percipient witnesses to the allegations contained in the instant indictment, and may also possess exculpatory and exonerating information". Greenman Affidavit [107] at 14, ¶ 39. Without more, the need for disclosure of informant identities has not been established. See United States v. Callahan, 2013 WL 4718474, *4 (W.D.N.Y. 2013) ("[i]t is not sufficient that the informant was a participant and witness to the

crime"); <u>United States v. Boone</u>, 2003 WL 841088, *6 (S.D.N.Y. 2003) ("[m]ere speculation . . .

that the informer may possibly be of some assistance does not overcome the strong public

interest in protecting informants").  Alternatively, defendants request that I review *in camera*

"any written documentation memorializing the agreement between the confidential sources and

the particular law enforcement agency involved".  Kooshoian Affirmation [103-2] at 11, ¶ 109;

*see also* Michalek Affidavit [106-1]  at 35, ¶ 113.  However, defendants having failed to

sufficiently articulate grounds warranting such review, this request is also denied.  *See* <u>United

States v. Monge</u>, 2012 WL 1900363, *11 (W.D.N.Y. 2012) ("[s]imilarly . . .  defendant has

failed to sufficiently articulate a need for this Court to conduct an *in camera* review to evaluate

the competing interest").


    **8.**    **Motions for Disclosure of Grand Jury Materials**

        Defendants seek disclosure of grand jury materials.  Kooshoian Affirmation [103-

1] at 3, ¶¶ 27-8; Michalek Affidavit [106-1]  at 14, ¶¶ 28-29;Greenman Affidavit [107]  at 46-47,

¶¶112-13; Michael Pryor motion [108] at 11.  Relying on Rule 6(e)(3)(E)(i) and (ii)[11],

defendants seek disclosure "of transcripts of all testimony before and all exhibits considered by

the grand jury".  Greenman Affidavit [107] , ¶112.  They argue that disclosure is necessary since

defendants are subject "of a bare bones Indictment", and need to be "informed of what evidence

actually exists against [them], and so [they] can intelligently make a decision as to [their] course

---

[11]        Defendants Greene, Shawn Pryor, and Melanie Pryor cite Rule 6(e)(3)(C)(i) ([107] ¶ 112;
[106-1] at 14, ¶ 28; [103] at 3, ¶ 27)), but I believe they intended to reference Rule 6(e)(3)(E)(i).

of action" (id., ¶113);  *see also* Kooshoian Affirmation [103-1] at 3, ¶ 28; Michalek Affidavit

[106-1]  at 14, ¶ 29; Michael Pryor motion [108] at 11.

        "The burden is on the party seeking disclosure to show a *particularized need* that

outweighs the need for secrecy."  In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996)

(emphasis added).  Defendants' generalized claims of need fail to meet this threshold.  There are

also means short of obtaining the grand jury transcripts, such as the voluntary discovery

produced, that will permit them to adequately prepare for trial.  Moreover, the "transcripts of

grand jury testimony of witnesses called by the government to testify at trial must be made

available to the defendant pursuant to and in accordance with the provision of 18 U.S.C. §3500".

United States v. Mehta, 2013 WL 1878903, *10-11 (W.D.N.Y. 2013).  Therefore, these motions

are denied.

        **B.**    **Government's Cross-Motions for Reciprocal Discovery**

        The government moves for reciprocal discovery pursuant to Rule 16(b).  [113] at

28; [112] at 27-28; [115] at 44-45; [114] at 29.  Defendants have not opposed this request.

Therefore, the government's motions are granted.  "Defendant[s] shall provide such discovery, if

any, not later than 30 days prior to trial or such other date as the District Judge may direct."

United States v. Sikut, 488 F.Supp.2d 291, 304-05 (W.D.N.Y. 2007).

**CONCLUSION**

For these reasons, the government's cross-motions for reciprocal discovery are granted, defendants' non-dispositive motions are granted in part and denied in part, and I further recommend that defendants' motions to suppress wiretap evidence and statements, and Greene's motion to controvert the search warrants for her residence and iPhone be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by February 23, 2024. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: February 9, 2024

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge

- 38 -